you may proceed. Thank you, Your Honor. May it please the court. There are two issues before the court today. One is the purely federal exhaustion of administrative remedies issue, and the second is a purely state law issue about the conflict between two Arizona statutes. I will begin with the second issue and reserve time at the end to address the first if the court has any questions and for rebuttal. This is a case about the Arizona State Legislature in 1999. What they were thinking when they passed FERA, the Free Exercise of Religion Act, and why they did what they did. 1999 is when Arizona passed FERA. FERA intended to open the state courthouse doors to all persons whose By contrast, in 1994 the state legislature passed ARS 31-201.01 subsection L, which intended to slam the courthouse doors on prisoner lawsuits of all kinds. What was more important to the 1999 legislature? Strong religious protections for all or keeping prisoners out of state court? Plaintiffs position is that the latter is not a legitimate goal for a state to have, in addition to being antithetical to the stated goals of the former law. When you say not a legitimate goal, are you saying that it's independently unconstitutional or are you just saying you don't believe that that's what they wanted to do? I'm saying that as applied, it is arguably unconstitutional to prevent, to have a law that closes the courthouse door to a class of people. Have you made that argument that is arguably unconstitutional? Yes. I believe also that this is not what the state intended because it is Well, of course, of course, in the implied repeal of a statute, there can't be a presumption unless the intention is manifest and clear. Where do we find language that would rise to that level? Yes, FARA was almost entirely copied from RFRA, the Religious Freedom Restoration Act that was passed by Congress in 1993 and applied to prisoner civil rights cases about religious rights until 1997 when it was overturned by Bernie V. Flores. In 1999, when the states were allowed to have their own version of RFRAs, Arizona passed FARA, made it retroactive to apply to all laws then in existence. One of those laws was the 1994 ARS 31-201.01. Therefore, the legislature can be presumed to have known what the laws were at the time that they passed FARA and made it retroactive. Additionally, because RFRA applied to prisoner rights cases for that four-year period in state court, and because FARA almost copies it word for word, it can be presumed to apply to prisoners' cases as well. You know, this is an unusual posture, as you know, and you're asking us to overrule a state court on a question of state law where there are at least good arguments on both sides. I understand that it's a state trial court. You're not asking us to overrule, you know, the Arizona Supreme Court or even an intermediate appellate court. But I start out from the position that I'd have to be pretty sure that the state court got it wrong before I would overrule the state court on a question of state law. I understand, Your Honor. However, there really is no way to harmonize these two statutes. Because if you say that, because in the state court, it was made very clear that the phrase authorized by a federal statute actually means brought under a federal statute. Therefore, the only way for a state prisoner to bring a FARA claim under ARES 31-201 is to show a serious physical injury. And as we know, there's constitutional harms and then there's physical harms. And there's a reason why constitutional harms were separated out from physical harms. Because such as in the case of a free speech claim, you know, if somebody comes, a policeman comes up to you and says, shut up, stop what you're saying, and punches you in the face, you have two claims. One for the physical assault, and one for the offense to your free speech rights. If it was the consequence of what you're asking us to do, though, I mean, this is a really interesting case in terms of what's gone on in the various tactical or strategic decisions that have been made. Once you're in federal court, you got a exhaustion requirement. Once you're, but if you're in state court, you've got a different constraint. It's not as though the right is unconstrained in federal court. Yes, Your Honor, but once you are in federal court, you're no longer in state court. And so that state statute no longer applies. And so it is shutting the state courthouse doors to prisoners who want to bring claims under FARA. Yeah, but if that's obviously, but if the argument is that there should be a fairly strong presumption that a prisoner should be able to bring a free exercise claim without significant constraint, that's it. That that arguments be allied in both federal and state court. The constraints are different. In federal court, it's the exhaustion constraint. In state court, if we look at the earlier statute and say it's not been overruled, you can only bring suits essentially when there's been some physical injury. But it's not as though in either court, you are unconstrained if you're a prisoner trying to bring a free exercise claim. Yes, it's not. It's not the fact of the restraint. It's the type of the restraint, because the requirement of getting a serious physical injury before one can bring a religious rights claim is very different from the restraint of having to exhaust administrative remedies. I would certainly have no problem. The plaintiff would have no problem if Arizona changed the serious physical injury requirement to an exhaustion requirement. That doesn't run afoul of the Constitution in my mind. But requiring them to be assaulted or or to get an injury that impairs a major organ or puts them near death. I cannot come up with a single example where those two would be intertwined and not choose separate claims. Right. Now, but one possible construction of the intent of the Arizona legislature, if we hold that the earlier statute is not overruled by the later, is that Arizona said, listen, if you've got a free exercise claim, so it's a federal law claim, go to federal court. We're not going to prevent you from going to federal court. Right. But then you are in federal court. And again, you're no longer in state court. And so you the state has slammed the state courthouse doors closed on prisoners. Well, no, but you know, that happens all the time where litigants have to make a determination. Should I go to state court or should I go to federal court? For example, the Republican Guarantee Clause under the federal Constitution, you can't bring that in federal court, but you could bring it in state court. So we have a whole series of dilemmas that litigants face in terms of procedure and which court they would go to. Why is this any different? Yes, well, FARA was very broad and sweeping in its scope. It applies to all persons. It did not say all persons except prisoners. Certainly could have, but it didn't. And there was there was a federal case where the Arluipa was considered to when it was being drafted to exclude or not Arluipa, I'm sorry, RFRA, to exclude prisoners. And and that was shot down. And so then when Arizona created FARA and cut and pasted RFRA, basically, Arizona included that sweeping scope of all persons are allowed to bring these claims. So if you find that ARS 31-201.01 actually amends FARA, you would have to find that the persons and that goes against everything that of statutory interpretation. Let me ask when you say persons, let me just Judge Fletcher had asked if you were in effect claiming the statute would be unconstitutional. And you said yes, and that you had argued that. But in looking at your brief, the only thing I see on constitutionality is a last sentence that just says that closing the courthouse doors would raise serious constitutional questions citing a district court case out of Missouri. Is that the only place that you argued that the statute is unconstitutional and we should reach that issue? Well, it was argued below in state court because of but the question here is now we're we're in federal court and we have a general rule that if you don't raise something directly and argue it more than in passing in your opening brief, then there's a waiver or forfeiture. So apart from the lower court, which as we've noted, that ruling kind of came up to us in federal court. Did you argue this in your brief? It was not. It was not thoroughly argued, Your Honor. However, the conclusion can be inferred because of the similarity to the jurisprudence regarding the Prison Litigation Reform Act, which has a similar requirement of a physical injury. However, courts in interpreting that requirement found that it was unconstitutional to require a physical injury for a purely constitutional harm. And therefore, this is what the state statute is doing. And the court may reach that issue on its own if it finds that the that this is, in fact, the case. Did you want to reserve time for Rodel? Yes, thank you. About two minutes left. Thank you, Your Honor. You're welcome. We'll now hear from the state. May it please the court. My name is Jason Corley. I represent the defendant at Belize, the state of Arizona, and Charles Ryan in his official capacity. There are two issues that raised in the appellant's argument. There are two principles of statutory interpretation that apply in this court, in the United States Supreme Court, and in Arizona courts that compel the determination that the state court's decision was correct. First, that if two statutes are in tension, that those must be read in a way to make them both effective. And secondly, when a specific or exceptional statute is passed first and a general grant or broad statute is passed second, the way to read those in harmony is to apply the specific exception to the general grant. Crespin argues both in his brief and as Ms. Sheff stated here, the FARA statute in Title 41 was very broad. It applied to all citizens. We don't contest that FARA does apply to prisoners. The specific exception that predated it in Title 31 should be applied to FARA and to claims brought under that act. We disagree with the idea that this would erase FARA for prisoners or somehow close the courthouse doors. Simply, it puts a requirement on those types of claims as it does to all state law claims. If I can ask the following question. I asked your adversary as to whether or not the constitutional question had been argued. I think it's a fair, I mean, the reason I asked it, I had not seen it in the brief. I think the best one could say, and it may even be a bit of a stretch, that at least it was put on the table so that we would ask ourselves the question, should we use the interpretive rule that says we should interpret a statute so as to avoid a constitutional question? So could you address briefly the constitutional question that might be presented if we were to uphold the earlier Arizona statute that allows prisoner claims only if there's a severe injury? Yes, your honor. Just to address that briefly, I agree with the procedural analysis that the only court that addressed this was the Superior Court, and I don't believe that it was directly addressed in either of our briefings. Certainly, I did not have the opportunity to argue this in my written materials, but since the court invites, I would suggest that simply placing a constraint on the type or process of the claims does not, as a plaintiff dramatically describes it, slam the courthouse door, particularly when it includes a specific provision for federal claims that might be authorized. And I'm speaking now of the Title 31 restriction for a physical injury requirement. Obviously, any federal claim that exists, including both 1983 and other prisoner constitutional claim creation statutes, are not constrained by Arizona's Title 31 requirements. And as this court pointed out, a plaintiff can simply go to federal court to have those rights ameliorated. I would also add that they can also, in many cases, bring them to state court under federal statutes. I've defended numerous 1983 cases, both from prisoners and non-prisoners, in state court. That was my next question, is that obviously 1983 cases can be brought in state court. Yes. And sometimes they're the RLUIPA claim resulted in the case being removed, but certainly I've defended those claims in state court as well. And Title 31 explicitly says, if it's based on a federal statute or a federal claim, that Title 31 has no applicability. I think that restriction is extremely relevant to its constitutionality, again, if the court decides to reach that question. So let me just ask you as a practical matter for a prisoner, that is the only way to avoid the physical harm restriction to bring a federal claim? I would say that is correct. The Title 31 restriction applies to all claims against specific persons, I would say, in the state court and state claims system. If it's a federal claim, the title has no applicability. So that in terms of the force of the statute of limiting these prisoner claims to physical injury, that basically is undermined if there is a, not really undermined, but it's negated in effect if there is a federal claim. Is that correct? Exactly correct, Your Honor. Whether it's a RLUIPA claim, whether it's a 1983 claim, or any of the other numerous federal claims that are either constitutionally or statutorily based, Title 31 has no applicability to those. I should say this specific Title 31 requirement has no applicability to those. Turning now to the question of exhaustion on the RLUIPA claim, unless there are other questions on the statutory construction issue that the court has. Very well. The exhaustion question is one that this court has set up a set of rules to evaluate. I cite those on page 25 of my answering brief. It was handed down in is that he was essentially the grievance system, which is the administrative remedy that he's required to exhaust. It was made unavailable to him by a letter sent by the director in response to a unrelated grievance that said, if you continue to file vexatious grievances, you might be classified as a vexatious grievance, and here's the rule for that. I think that is probably a losing argument for Mr. Crespin because it turned out he wasn't really deterred. He files later grievances, but I have to say that I'm distressed by what the director wrote. The director writes, please note you filed complaints that fall within the definition of vexatious grievance litigant. The other grievance is case number, and then it gives the number. That's the first grievance that they took as materials. I do not see that as a vexatious grievance at all. Do you agree with me, or do you agree with the warden? I believe that what that's referring to is the use of the non-disciplinary grievance system to attempt to grieve determinations that are made in the disciplinary grievance system. No, that's not how I read this at all. The warden is saying, listen, this one is frivolous or vexatious. I'm not asking about that one. He says the other one is vexatious or frivolous, and the other one is his grievance when he says you took my materials, including religious materials, when I came in. I have great trouble seeing that that first grievance was vexatious or frivolous. Do you agree with me, or do you agree with the warden? Your Honor, since that particular grievance issue was not part of this lawsuit, this isn't a lawsuit about improper discipline or improper seizure of materials, and the discipline was not for those materials. The discipline was... I'm not talking about the discipline. I'm talking about the warden saying that first grievance was vexatious. That just strikes me as dead wrong. And if, in fact, he had never filed another grievance, I might actually be inclined to hold with him because this is the warden saying that's a vexatious grievance when it was not at all, at least in my view. And I'm asking you again, do you agree with the warden or do you agree with me as to the first grievance? The grievance, in other words, when he said you took my religious materials when I came into the prison. I believe that the warden's indication of what that is is I would say that the warden is correct in that situation. So what is the vexatious then about that first grievance where he says you took my religious materials? Because it is part of the disciplinary process. No, this is not part of the disciplinary process. The grievance says when I came into the prison without justification, you took my religious materials. The warden denies that at the earlier one, saying there's nothing in the forms that says anything was taken. And I've got some hesitation about that, too, because who filled out the forms? It certainly wasn't the prisoner. But be that as it may, the correctness of that resolution is not in front of us. The question I have is whether or not that first grievance was vexatious and had great trouble seeing that that was vexatious. Can you tell me why you think it's vexatious? I believe, Your Honor, that it's a little unclear from the record. My understanding of what the warden thought, and I'm not sure you can find this in the record specifically, but my read of that with respect to all of the different materials that were provided is the grievance was related to the foil and opiates that were found on the foil and the disciplinary issue that came about as a result of that. I agree that if the actual grievance was simply about the taking of material... I read the grievance. That's exactly what it was. If that grievance was submitted in before the disciplinary action. I would defer to the court on that. I don't think it's... And I signaled to you at the beginning of this questioning, this argument to me doesn't win because it's clear he wasn't deterred, but I have to say I'm distressed by the warden saying that that was vexatious and threatening him with discipline for filing another grievance that's comparable to that first one. I understand that concern, Your Honor, and I would simply refer the court back to McBride v. Lopez, which indicates that there's a specific type of threat that must have been made, which is that the prison official's action communicated a threat not to use the prison's grievance system. Well, that's the threat. I'm reading to you from the warden. Otherwise, staff will have no choice but issue a disciplinary ticket. That sounds like a threat to me. Well, but it is not a threat to not use the prison's threat. The threat is if you submit another grievance comparable to that first one, we're going to discipline you and give you a ticket. So he has to say, well, what was it about my first grievance that was vexatious? And I have great trouble seeing how that one was vexatious. I understand, Your Honor, and if, again, that's not truly in the spotlight of why we're here. I understand that, but I've got to say that I think the warden was abusive on that one. I will pass along that information, Your Honor, to my client. I have a related question or two questions, really. One is, is there anything in the grievance policy 802 which says what the contents of a grievance must include? Because it looks to me like, frankly, the warden, well, all the way up the chain of that first grievance, the department employees didn't understand what the plaintiff was talking about and also made no effort whatsoever to understand his complaint. And there is a provision in Rule 802 which says all department employees are responsible for promoting meaningful dialogue. That's what this entire process is supposed to be about. So, number one, does that have any bearing on whether we find that the plaintiff failed to exhaust? And number two, is there anything in the policy which says what a grievance has to include to be sufficiently specific? I believe the Rule 802 that you referred to and, in general, the grievance policy, it's fairly permissive as far as what may be submitted. But if, as you say, there isn't a comprehension of what the grievance says, and there are many times when even I've read a grievance and just didn't understand what the actual complaint was, then it makes it very difficult for officials to respond. I would say that your identification of the need for dialogue in departmental orders was fulfilled in this case by the actual grievances with respect to his religious practice, excuse me, that his actual attempt to have the religious practice evaluated with the chaplaincy and then with the Religious Accommodations Committee. Those were both dialogues between Prespin and the departmental employees, and that was the proper method, and he knew the proper method and pursued it. He simply didn't pursue it to the director level and exhaust his administrator for evidence. I see that my time is up. Unless there's anything else from the panel, thank you for your time. Thank you. Thank you. Yes, just with regard to the exhaustion question, it puts my client in a catch-22. If he grieves, he's running the risk of being called vexatious and getting a disciplinary ticket. If he doesn't grieve, he's at risk of having his case dismissed for failure to grieve. Because the staff at the prison decided that his religious materials were not religious materials, they then categorized it as a non-religious grievance. That was their decision. But Mr. Prespin communicated adequately that he was complaining about their treatment of his religious items, and when he did go to the chaplain to ask for it to be approved again, the chaplain said, no, those don't fit within your religious practice. So, turning back to the conflict of statutes, the FARA was passed intending to apply to all We now understand that if they try and use it, they have to show a serious physical injury. That's the only way a prisoner can sustain a FARA claim in state court right now without being subject to the risk of removal. And ARS, turning to the canons of construction, ARS 31-201 has been found by this court to be an expression of sovereign immunity. It is a broad statute which protects the state from suit by prisoners on any subject, pretty much. Whereas the more recent trumps the older, the more specific trumps the more general. And finally, and most importantly, statutes are not to be interpreted to produce absurd results, like insisting on a serious physical injury in order to complain about religious rights violations. Thank you, your honors. Can I ask a question here? Yes. So, if we were to find that plaintiff sufficiently exhausted his federal claim, does the argument about the state statute even matter? Yes, they're independent of one another. This court, even if it dismisses the federal claim because the state court case was brought whole from state court into the federal court, the issues that were left at the end of the state court case still remain. I attempted to appeal from each and every, you know, order to get a final order from the court. And the response that I got from both courts was that you need to wait until the federal case is complete. And so the federal, sorry, I'm sorry. Maybe my question wasn't clear. So it's your thought that you need to pursue both federal and state claims simultaneously. Why? Well, the only issue in the federal court is the exhaustion claim. The state court issues were brought in, and they are independent of one another. So even if you find that he did not exhaust his administrative remedies, you may still address the state court issues. No, my question is, if we find that he did exhaust, then why do you feel like you need to pursue both state and federal claims simultaneously? Yes. Well, one option, the whole purpose of this case was to challenge that state court law. And plaintiff amended several times in order to try and assert a claim that was authorized by a federal statute without bringing a federal statute in order to show the conflict between these two laws. But the state court found that Mr. Crespin either had to show a serious physical injury, which he had not, did not plead. He didn't have. We admit that. And so finally, as a last resort, he added the Arluipa claim in order to maintain his case, and then the state decided to remove it to federal court. Therefore, the main issue for plaintiff is the conflict of laws. But that may be plaintiff's main issue, but from the standpoint of the court, um, is would there be any need to press the state claim if we find that plaintiff exhausted? Well, yes, we still need to resolve the burden on Mr. Crespin's religious practice that was worked by the prison. Right. So you would go to the merits of the plaintiff's federal claim. Uh, we would like to go to the, the, um, yeah, FARA is a state remedy. Um, and that is the statute under which plaintiff wished to bring his case. Uh, and so therefore, we still need to, to reach the merits of the FARA claim. What would, what would be the practical result if you didn't have the state claim, but you had the federal claim? Uh, then, uh, you know, we would have started in federal court. No, I'm just saying where you are now, if you only had a federal claim, but not the state claim, would there be differences in relief available to your client? Uh, well, obviously there's no damages available under our LUIPA. Uh, however, we are primarily looking for prospective relief, which would be available under our LUIPA. Um, so therefore, because they are very similar claims, we would still be asking, uh, you know, whichever court to review the actions of the department in burdening Mr. I mean, I guess that the short answer is you would end up in the same place in terms of your injunctive or prospective relief. Is that right? Uh, yes, without the procedural complication. Yes, thank you. So the, so the remedies under each would be essentially the same. Now, I don't know what, what the attorney's fees proposition is under state law. You'd get some attorney's fees under federal law were you to prevail. Yeah. All right. Thank you. I'd like to thank both counsel for the argument this morning. It's a very interesting case. The case of Crespin v. State of Arizona is submitted.
judges: McKEOWN, FLETCHER, Vratil